**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 29, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

GABRIEL MIRABAL,

     Defendant-Appellant.

No. 16-2188

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:13-CR-01152-WJ-1)**
_____

Gabriel Mirabal filed a brief *pro se*.

Mark T. Baker (Carter B. Harrison, with him on the briefs), Peifer, Hanson & Mullins, P.A., Albuquerque, New Mexico, for Defendant-Appellant.

Nicholas J. Ganjei, Assistant United States Attorney (James D. Tierney, Acting United States Attorney, with him on the briefs), Albuquerque, New Mexico, for Plaintiff-Appellee.

_____

Before **KELLY**, **HOLMES**, and **BACHARACH**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.
_____

     This appeal is brought by Mr. Gabriel Mirabal. He is a convicted felon, which prevented him from lawfully possessing a gun. 18 U.S.C.

§ 922(g)(1). But authorities thought that they had seen Mr. Mirabal put an assault rifle in the trunk of a car. This sighting led authorities to arrange for a local officer to stop Mr. Mirabal for a traffic violation and to search the trunk. Carrying out these arrangements, Deputy Micah Barker saw Mr. Mirabal speeding and initiated a traffic stop.

After telling Mr. Mirabal that he had been speeding, Deputy Barker looked for an assault rifle. Though he didn't find one, he did find a kilogram of cocaine in the car's interior. The discovery of cocaine in the car became key evidence for one of the eventual charges against Mr. Mirabal. In defending against these charges, Mr. Mirabal argued that the search had violated the Fourth Amendment. This argument did not convince the district court, and the case went to trial.

At the trial, the Government presented testimony by the owner of the car, Mr. Dominic Anaya, who had pleaded guilty to his own drug crimes. Mr. Anaya testified that he and Mr. Mirabal had worked together to sell cocaine. So Mr. Mirabal set out to impeach Mr. Anaya. To do so, Mr. Mirabal tried to question Mr. Anaya about how much he expected his sentence to drop as a result of his plea agreement. Mr. Mirabal was allowed to probe the plea agreement in general terms, but not in detail.

On appeal, Mr. Mirabal raises two primary arguments and three supplemental arguments.

2

First, Mr. Mirabal challenges the introduction of evidence involving the cocaine found in the car. Deputy Barker had probable cause to believe that there was an assault rifle in the trunk, so he looked there. But Deputy Barker claims that he could not see the back of the trunk because of a long speaker box blocking his view. To see the trunk better, he entered the back seat and pulled an armrest down. It was then that Deputy Barker found the cocaine.

Mr. Mirabal alleges that Deputy Barker violated the Fourth Amendment by going into the interior of the car and pulling the armrest down. We disagree, concluding that the officer complied with the Fourth Amendment by acting reasonably in trying to find a way to see into the back of the trunk.

Second, Mr. Mirabal challenges the restrictions placed on his cross-examination of Mr. Anaya. For the sake of argument, we may assume that the restrictions violated the Confrontation Clause. Even if they did, however, any possible violation would have been harmless in light of the strength of the prosecution's case and Mr. Mirabal's opportunity to thoroughly undermine Mr. Anaya's credibility in cross-examination.

Finally, Mr. Mirabal alleges insufficiency of the evidence, destruction of evidence, and withholding of evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). We reject these challenges, concluding that the trial evidence was sufficient to convict, the evidence was not

3

destroyed in bad faith, and Mr. Mirabal did not identify the evidence allegedly withheld in violation of *Brady*.

In light of these conclusions, we affirm the conviction.

## I.    Motion to Suppress

We begin with Mr. Mirabal's argument for suppression of evidence involving the cocaine found in the car.

### A.    Standard of Review

On this issue, we review the district court's "factual findings for clear error and view the evidence in the light most favorable to the government." *United States v. DeJear*, 552 F.3d 1196, 1200 (10th Cir. 2009). A factual finding is clearly erroneous if it lacks evidentiary support or if a review of the evidence leaves us "'with the definite and firm conviction that a mistake has been made.'" *United States v. Haymond*, 869 F.3d 1153, 1157 (10th Cir. 2017) (quoting *United States v. Hernandez*, 847 F.3d 1257, 1263 (10th Cir. 2017)). The ultimate reasonableness of the search, however, is reviewed de novo. *DeJear*, 552 F.3d at 1200.

### B.    The Ruling in District Court

Mr. Mirabal moved to suppress evidence of the cocaine, arguing that Deputy Barker's search had exceeded the scope permitted by the Fourth Amendment. The district court credited Deputy Barker's testimony and ruled that the search had complied with the Fourth Amendment. Mr. Mirabal challenges this ruling.

4

## C.    Reasonableness of the Search

In challenging the ruling, Mr. Mirabal does not question the existence of probable cause regarding the presence of an assault rifle in the trunk. He instead asserts that Deputy Barker acted unreasonably by entering the back seat and pulling the armrest down.[1] We disagree.

Law-enforcement officers may search a car without a warrant upon probable cause to believe that contraband is present. *United States v. Chavez*, 534 F.3d 1338, 1345 (10th Cir. 2008). But a search is permitted only in the parts of the car where the officers could reasonably expect to find the contraband. *See United States v. Ross*, 456 U.S. 798, 824 (1982) ("The scope of a warrantless search of an automobile . . . is defined by the object of the search and the places in which there is probable cause to believe that it may be found."). For example, "[p]robable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab." *Id.*

The officers are limited not only in the place to search but also in the manner of searching, which must be "reasonable under the circumstances." *United States v. Mendoza*, 817 F.3d 695, 702 (10th Cir. 2016). Thus, an

---

[1]    Mr. Mirabal also asserts that Deputy Barker violated the Fourth Amendment by searching the front-seat area. But the cocaine was not located there; as a result, the constitutionality of Deputy Barker's search of the front-seat area does not affect the admissibility of evidence involving the cocaine. *See Wong Sun v. United States*, 371 U.S. 471, 485 (1963) (noting that the exclusionary rule operates to suppress evidence "obtained either during or as a direct result" of a Fourth Amendment violation).

5

officer can decide how to carry out a search as long as the officer's decision is reasonable. *Lawmaster v. Ward*, 125 F.3d 1341, 1349 (10th Cir. 1997). For example, the officer may deem it necessary to perform "separate acts of entry or opening" in order to conduct the search. *Ross*, 456 U.S. at 820-21.

Mr. Mirabal presents five arguments for why Deputy Barker should not have entered the back seat and pulled down the armrest:

1. The back of the trunk, behind the speaker box, was too small to fit an assault rifle.

2. The package was not immediately recognizable as contraband, preventing seizure under the plain-view doctrine.

3. Deputy Barker could discover whatever lay in the back of the trunk by leaning over the speaker box and searching with his hands.

4. The compartment behind the armrest (where the cocaine was found) was too small to contain an assault rifle.

5. Deputy Barker did not know whether the car had a trunk-access panel.

We reject Mr. Mirabal's first argument. Deputy Barker testified based on his military experience and familiarity with assault rifles. In light of this experience, he testified that a rifle could have fit behind the speaker box. *See Ornelas v. United States*, 517 U.S. 690, 699 (1996) (recognizing that police officers can draw inferences from prior experience). The district court had little reason to question Deputy Barker's explanation for why he had tried to view the back of the trunk.

6

Mr. Mirabal criticizes Deputy Barker's explanation, contending that the assault rifle was too big to fit in the part of the trunk hidden from view. For this contention, Mr. Mirabal relies on a 1969 manual describing the length of assault rifles. But Mr. Mirabal failed to present the district court with evidence of this manual. Without such evidence, the district court could reasonably rely on Deputy Barker's explanation for why he had tried to see into the back of the trunk.

We also reject Mr. Mirabal's second argument (that the package was not recognizable as contraband). Mr. Mirabal did not present this argument in district court, and he has not urged plain-error review. Therefore, we decline to consider this argument. *See United States v. Lamirand*, 669 F.3d 1091, 1099 n.7 (10th Cir. 2012).

Mr. Mirabal's third argument is that Deputy Barker could have looked into the trunk without pulling the armrest down. The only evidence on this issue came from Deputy Barker. He testified that

- he could see only the front part of the trunk because a speaker box ran nearly the entire width of the trunk,

- he could not see the space behind the speaker box,

- the space behind the speaker box was big enough to contain a rifle,

- the speaker box would not move, which prevented Deputy Barker from searching the back of the trunk, and

- he entered the back seat to see if he could gain access to the trunk by folding the seats down.

7

The district court credited Deputy Barker's testimony, and Mr. Mirabal does not point to any evidence of an ability to see into the back of the trunk without entering the back seat. We therefore reject Mr. Mirabal's third argument.

Mr. Mirabal's fourth argument is that the area behind the armrest was too small to fit an assault rifle. This argument ignores Deputy Barker's reason for looking behind the armrest. He folded the armrest down to gain access to the trunk, not to find another hiding space within the car. And when Deputy Barker pulled the armrest down, he saw a void that appeared to expose the trunk. Moments later, he saw the package containing the cocaine.

The district court again found Deputy Barker's testimony credible. The photographs presented to the court show only an opaque black space behind the armrest; these photographs do not clearly support either side. With these inconclusive photographs, the district court had little else with which to appraise Deputy Barker's account. In these circumstances, the district court's finding was not clearly erroneous.

Finally, Mr. Mirabal contends that pulling the armrest down was unreasonable because Deputy Barker did not know whether the car had a trunk-access panel in the back seat. But Deputy Barker knew that many

8

cars had such panels and that going through the back seat was the only practical way to search the rest of the trunk.

In our view, Deputy Barker's effort to see into the back of the trunk was reasonable.[2]

## II.    Confrontation Clause

Mr. Mirabal also claims a violation of the Confrontation Clause based on his inability to fully cross-examine Mr. Anaya. Mr. Anaya was a co-conspirator testifying for the Government, and Mr. Mirabal was allowed to question Mr. Anaya on how he expected to benefit from his cooperation. But Mr. Mirabal wanted to go further, cross-examining Mr. Anaya about how much he expected his sentence to drop because of his cooperation with the Government. This line of questioning was disallowed, and we may assume for the sake of argument that the restriction violated the Confrontation Clause. With this assumption, we would regard the violation as harmless.

### A.    The Cross-Examination

The district court permitted Mr. Mirabal to cross-examine Mr. Anaya about his

- plea agreement with the Government and

---

[2]    The Government also argues that Deputy Barker had probable cause to search for ammunition and narcotics, justifying a search of all compartments within the car. We need not address this argument because the search would have been reasonable even if probable cause had been confined to an assault rifle in the trunk.

- expectation of a lighter sentence because of his cooperation.

But the court did not permit Mr. Mirabal to use the plea agreement itself or to ask Mr. Anaya about how much he expected his sentence to drop. The court reasoned that this questioning would entail conjecture and could cause the jury to speculate about Mr. Mirabal's own sentence.

## B. The Harmlessness Inquiry

The Government argues that any constitutional violation would have been harmless. On harmlessness, the Government bears the burden to show "beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Neder v. United States*, 527 U.S. 1, 18 (1999).

To determine whether the Government satisfied this burden, we consider "the importance of [Mr. Anaya's] testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of [Mr. Anaya] on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

### 1.  Importance, Cumulativeness, and Corroboration

Three of the factors (importance, cumulativeness, and corroboration) are interrelated here. Considered together, these factors do not weigh heavily in either direction.

Mr. Anaya was used mainly to interpret approximately twenty wiretapped telephone calls, testifying that various code words referred to the sale of crack and powder cocaine, that he and Mr. Mirabal had supplied other conspirators with crack and powder cocaine, that Mr. Mirabal had provided instruction on how to cook crack cocaine, that the two men would sell ten ounces of crack cocaine (the statutory requirement) in only a couple of days, and that Mr. Anaya would not have left $30,000 worth of cocaine in the car that he allowed Mr. Mirabal to drive. This testimony supported the Government's theory that Mr. Anaya and Mr. Mirabal had conspired to sell cocaine.

Mr. Mirabal did not deny a conspiracy. Instead, he argued that the conspiracy was to sell marijuana wax rather than cocaine. Here too Mr. Anaya rebutted Mr. Mirabal's argument, testifying that the two men were not in the business of selling marijuana wax.

Mr. Anaya's testimony was extensive and important. But his testimony was also corroborated by other witnesses. For example, every telephone call discussed by Mr. Anaya was played for the jury and interpreted the same way by law-enforcement witnesses. In interpreting the

11

calls, the law-enforcement witnesses testified that Mr. Mirabal had supplied various individuals with large quantities of crack cocaine, negotiated prices and made arrangements to sell crack cocaine, and aggressively collected debts. Other corroborating evidence involved two undercover drug deals to buy crack cocaine from one of Mr. Mirabal's alleged distributors, observations of Mr. Mirabal meeting with alleged buyers at the times arranged in the telephone calls, telephone calls in which Mr. Mirabal told Mr. Anaya how to cook crack cocaine, and telephone calls indicating Mr. Mirabal's intent to sell the cocaine stashed in the car. The abundance of corroboration weighs in favor of harmlessness.

But the influence of Mr. Anaya remained substantial, for he had been intimately involved in Mr. Mirabal's criminal enterprise. And the law-enforcement witnesses acknowledged that they had relied at least in part on information from Mr. Anaya while he was cooperating with the Government. Thus the factors of importance, cumulativeness, and corroboration are not dispositive; the issue of harmlessness turns instead on the strength of the prosecution's case and the extent of cross-examination.

### 2.    Strength of the Prosecution's Case

The overall strength of the prosecution's case supports harmlessness. The Government presented an enormous array of wiretapped calls that

officers interpreted as proof that Mr. Mirabal was setting up drug deals, negotiating sales, and instructing Mr. Anaya on how to cook crack cocaine. This evidence was coupled with officers' observations of Mr. Mirabal meeting with buyers at the arranged times.

The Government also presented strong evidence that the conspiracy had involved cocaine rather than marijuana wax. For example, searches of Mr. Mirabal's home and storage locker did not uncover the materials needed to make marijuana wax, and Mr. Mirabal's pricing matched the price of cocaine. In addition, the terminology used in the telephone calls made it unlikely that the coded references involved marijuana wax because

- Mr. Mirabal did not talk in code when referring to marijuana and marijuana wax,

- the law-enforcement witnesses testified that the code words matched crack and powder cocaine but not marijuana or marijuana wax, and

- the references to "cooking" made sense for the production of crack cocaine but not for the production of marijuana wax.

In our view, the strength of the prosecution's case weighs in favor of harmlessness.

### 3.    Extent of Cross-Examination

But the most critical factor is the extent of cross-examination that was allowed. Even with the restrictions, Mr. Mirabal was able to extensively cross-examine Mr. Anaya on his reliability and motive. By the

13

end, Mr. Anaya's credibility was sullied as much as it would have been with a fuller cross-examination.

For example, Mr. Mirabal questioned Mr. Anaya extensively on the reliability of his testimony, including his history as an abuser and a trafficker of drugs, his prior convictions for drug trafficking and armed robbery, his prior inconsistent statements, his inability to know who was driving his car after he went to prison, the discrepancies between Mr. Anaya's testimony and the testimony of other witnesses, and Mr. Anaya's prior effort to cooperate with the Government only to be told that his information was unreliable.

Mr. Mirabal also questioned Mr. Anaya extensively on his motive to aid the government. For example, Mr. Anaya admitted that he had entered into a plea agreement and had understood that the Government could help him obtain a sentence reduction in exchange for his cooperation, that his sentence would have been substantial without his cooperation, that his previous convictions could lead to a far longer sentence if the Government sought an enhancement as a career offender, and that the Government had chosen not to seek enhancement of Mr. Anaya's sentence. Mr. Mirabal drove the point home when Mr. Anaya admitted that he wanted to return home as soon as he could so that he could see his young children grow up.

The extensive questioning allowed Mr. Mirabal to aggressively attack Mr. Anaya's credibility. For example, in closing argument, Mr. Mirabal

14

pressed the jury to disregard Mr. Anaya's testimony on the ground that his plea deal had provided a motive to say whatever the Government wanted. In addition, Mr. Mirabal effectively used the jury instructions to cast doubt on Mr. Anaya's believability. In these instructions, the district court stated that the jury should weigh Mr. Anaya's testimony with caution because of his prior inconsistent statements, past convictions, status as a drug abuser, and plea agreement. *See United States v. Chavez*, 481 F.3d 1274, 1278 (10th Cir. 2007) (noting that jury instructions can diminish the impact of an error for purposes of harmlessness). In light of the extensive cross-examination, closing argument, and jury instructions, the jury was amply informed of Mr. Anaya's unreliability and motive to testify against Mr. Mirabal.

\* \* \*

For harmlessness, we ask: If Mr. Mirabal had been permitted to cross-examine Mr. Anaya on the specifics of Mr. Anaya's sentencing exposure, would we conclude beyond a reasonable doubt that the jury would still have returned a guilty verdict? *See* Part II(B), above. Based on the strength of the prosecution's case and Mr. Mirabal's extensive cross-examination of Mr. Anaya, we answer "yes." In our view, any violation of the Confrontation Clause would have been harmless.

15

## III.  Supplemental Appeal Points

Mr. Mirabal also filed a supplemental brief raising eight additional appeal points. Five of these appeal points are either undeveloped or included within the issues already discussed.[3] But three warrant separate discussion:

1.   sufficiency of the evidence,

2.   destruction of evidence, and

3.   withholding of exculpatory evidence.

We reject Mr. Mirabal's contentions on these issues.

### A.    Sufficiency of the Evidence

Mr. Mirabal contends that the evidence was insufficient to convict. We review this contention de novo, considering "'the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government.'" *United States v. Toles*, 297 F.3d 959, 968 (10th Cir. 2002) (quoting *United States v. Malone*, 222 F.3d 1286, 1290 (10th Cir.

---

[3]   In these appeal points, Mr. Mirabal contends that

- the Government used speculative interpretations of code words,

- the Government's case agent did not believe that the car contained drugs,

- no evidence existed to support Deputy Barker's testimony about speeding or recovery of a folding knife,

- Deputy Barker's testimony was unreliable, and

- Mr. Anaya committed perjury.

16

2000)). Considering the evidence in this light, we will reverse only if the trier of fact could not rationally have found guilt beyond a reasonable doubt. *Id.*

The first count involved conspiracy to distribute at least ten ounces of crack cocaine. As discussed above, the Government presented evidence that Mr. Mirabal had arranged to manufacture and sell more than ten ounces of crack cocaine. This evidence was sufficient for guilt on the first count.

The second count entailed possession of 500 grams or more of powder cocaine with intent to distribute. Here the Government presented evidence that Mr. Mirabal

- had been caught with one kilogram of cocaine in a car that he was driving and

- had been transporting the cocaine to sell it.

This combination of evidence was sufficient for guilt on the second count.

The third count involved possession of a firearm and ammunition. Here the Government presented evidence that officers had found a firearm and ammunition in Mr. Mirabal's residence, where he lived alone. This evidence sufficed for guilt on the third count.

The final count involved possession of body armor. Here the Government showed that body armor had been found in Mr. Mirabal's storage locker. Again, this showing was sufficient for a finding of guilt.

Viewing the evidence in the light most favorable to the Government, a rational trier of fact could have found Mr. Mirabal guilty on each count.

## B. Destruction of Evidence

Mr. Mirabal also challenges the destruction of drug evidence that had allegedly been obtained from a distributor for Mr. Mirabal. Law-enforcement officers recognized the substance as crack cocaine, and it tested positive in a field test. But authorities later filed a notice announcing the destruction of the drugs based on a governmental policy.

Mr. Mirabal did not present this argument in district court, and he has not urged plain-error review. Thus, we could decline to address this argument. *See* Part I(C), above.

But this argument would fail even under de novo review. To prevail, Mr. Mirabal needed to show that the Government had acted in "bad faith" by destroying potentially exculpatory evidence. *United States v. Beckstead*, 500 F.3d 1154, 1159 (10th Cir. 2007). "Generally, however, destroying the evidence according to 'an established procedure'. . . 'precludes a finding of bad faith absent other compelling evidence.'" *Id.* (quoting *United States v. Gomez*, 191 F.3d 1214, 1219 (10th Cir. 1999)).

In our view, the authorities did not act in bad faith. They destroyed the drugs based on an existing policy and filed a notice announcing the destruction of the drugs. In these circumstances, we have no reason to find

18

bad faith. Thus, we would reject Mr. Mirabal's argument even if it had been preserved.

### C.   Withholding of Exculpatory Evidence

Finally, Mr. Mirabal asserts that evidence was withheld in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). But he does not identify the evidence allegedly withheld or say how this evidence would have been pertinent. Instead, Mr. Mirabal asks us to overrule *Brady*'s requirement of materiality. But we cannot overrule a Supreme Court opinion. *See Burrell v. Armijo*, 456 F.3d 1159, 1171 n.9 (10th Cir. 2006) ("Needless to say, we cannot overrule the Supreme Court.").

## IV.   Conclusion

We reject Mr. Mirabal's challenges to his conviction.

First, we reject his challenge under the Fourth Amendment because Deputy Barker acted reasonably in pulling the armrest down in order to see into the back part of the trunk.

Second, even if the Confrontation Clause had been violated, the violation would have been harmless because the Government presented compelling evidence of guilt and Mr. Mirabal was able to effectively undermine Mr. Anaya's credibility on cross-examination.

Third, the evidence was sufficient to convict Mr. Mirabal on each count.

19

Fourth, Mr. Mirabal did not preserve his appeal point involving the destruction of evidence, and he presented no evidence of bad faith.

Finally, the *Brady* claim is invalid because Mr. Mirabal has not identified any withheld evidence or explained why it is material.

Having rejected each appeal point, we affirm the conviction.