**PUBLISH**

# UNITED STATES COURT OF APPEALS

# FOR THE TENTH CIRCUIT

———————————————————

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

FERNANDO DURAN,

     Defendant - Appellant.

No. 18-1062

———————————————————

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:17-CR-00135-RBJ-7)**

———————————————————

Adam Mueller, Haddon, Morgan, and Foreman, P.C., Denver, Colorado, for the Defendant - Appellant.

James C. Murphy, Assistant United States Attorney (Jason R. Dunn, United States Attorney, with him on the brief) Office of the United States Attorney, District of Colorado, for Plaintiff - Appellee.

———————————————————

Before **BACHARACH**, **BALDOCK**, and **EBEL**, Circuit Judges.

———————————————————

**BACHARACH**, Circuit Judge.

———————————————————

After a jury trial, Mr. Fernando Duran was convicted on drug charges. He appeals, arguing that

- the evidence was insufficient to convict on three of the counts and

- the district court abused its discretion in admitting testimony regarding prior drug transactions and interpretations of recorded calls.

We reject these arguments.

**1.    An investigation into Mr. Jerrell Birch leads to the convictions of Mr. Duran.**

The case against Mr. Duran stemmed from an investigation involving Mr. Jerrell Birch. The investigation included three controlled buys of crack cocaine from Mr. Birch and wiretaps on two of his telephones. The telephone calls aroused suspicion that Mr. Birch was buying cocaine from Mr. Duran, and these suspicions led to the prosecution of Mr. Duran. At trial, the government presented

- recorded telephone calls between Mr. Birch and Mr. Duran and

- testimony from law-enforcement officers describing the investigation and interpreting the conversations.

The jury found Mr. Duran guilty on four counts:

- Count 22: distributing and possessing cocaine with the intent to distribute on March 8, 2017 (*see* 21 U.S.C. § 841(a)(1) and (b)(1)(C)),

- Count 34: conspiring to distribute and possess cocaine and crack cocaine with the intent to distribute between February 1, 2017, and March 31, 2017 (*see* 21 U.S.C. §§ 841(a) and 846), and

- Counts 35 and 36: using a telephone to facilitate the manufacture, distribution, and possession with intent to

2

distribute crack cocaine on March 8 and 11, 2017 (*see* 21 U.S.C. § 843(b)).[1]

**2.    The evidence was sufficient to convict on Counts 22, 35, and 36.**

Mr. Duran challenges the sufficiency of the evidence supporting Counts 22, 35, and 36. We reject these challenges.

**A.    Standard of Review**

We engage in de novo review, viewing the evidence in the light most favorable to the government. *United States v. Mirabal*, 876 F.3d 1029, 1038 (10th Cir. 2017). Viewing "the evidence in this light, we will reverse only if the trier of fact could not rationally have found guilt beyond a reasonable doubt." *Id.*

**B.    Count 22: Distributing and Possessing Cocaine on March 8, 2017**

On Count 22, the government presented evidence that included both recorded calls and surveillance.

**1.    On March 8, after expressing happiness from Unc's visit, Mr. Duran directs Mr. Birch to "raindrop it," with the expectation of seeing "gooey, gooey."**

Two of the calls took place on March 8, 2017. In these calls, Mr. Duran acknowledged the presence of someone named "Unc," telling Mr.

---

[1]    Mr. Duran was acquitted on Count 24: distributing and possessing cocaine with intent to distribute 28 grams or more of a substance containing cocaine base (crack cocaine) on March 11, 2017.

3

Birch to "raindrop it." And Mr. Birch noted his anticipation of "gooey, gooey."

The first conversation took place early in the afternoon. In this call, Mr. Duran expressed happiness about a visit from Unc and told Mr. Birch to "raindrop it":

Duran:   Fucking Unc's is here.

Birch:   Oh yeah.

Duran:   Yeah.

Birch:   That's crazy.

Duran:   Fucking happy as a motherfucker.

Birch:   When did he get

Duran:   Raindrops, drop tops.

Birch:   Raindrops?

Duran:   (Unintelligible) its super, super raindrop.

Birch:   Yeah right.

Duran:   I swear, on everything.

. . . .

Duran:   Where you gonna be at [at 4 pm]

Birch:   I'll be in the hood. You already know where I'm gonna be at.

Duran:   Alright cause fucking ah I want you to raindrop it.

Govt. Exh. 9a at 57–58.

4

In another call that evening, Mr. Birch supplied directions to Mr. Duran for a meeting. As Mr. Duran drove, Mr. Birch noted that he was "about to see that gooey, gooey":

Duran: Motherfucker all I do is work.

Birch: Yeah all you do, sell bull shit work.

Duran: Yeah right motherfucker. Fuck you.

Birch: (Laughs)

Duran: We're about to see bull shit work.

Birch: Yeah I'm about to see that gooey, that gooey, gooey.

Duran: Yeah right motherfucker.

Birch: That goo. . . .

Duran: After this you're gonna be like where you at bro, bro. (Laughs)

Govt. Exh. 13a at 70–71.

**2. Mr. Duran and Mr. Birch meet later the same day for about 1-1/2 hours.**

The government also presented testimony from law-enforcement officers about their visual surveillance of Mr. Duran and Mr. Birch. On March 8, 2017, the officers saw the two men meet at an apartment complex for about 1-1/2 hours.

5

**3.** **Mr. Duran later acknowledges that he still had the "hard" given to him by Mr. Birch.**

Three days later, Mr. Duran acknowledges that he still had the "hard" given by Mr. Birch:

Duran: Unc's is supposed to be, I'm supposed to meet him when I leave out of here, but I still got that, that one and a heezy still.

Birch: What the hard that I gave you?

Duran: Yeah, you want that you don't have to fucking do nothing to it just get on it.

Govt. Exh. 14a at 84.

**4.** **Testimony defines the terms used: "Gooey, gooey" and "raindrops" refer to the upcoming conversion of powder cocaine into crack cocaine, and Mr. Duran's expression of happiness refers to the quality of Unc's cocaine.**

Law-enforcement officers testified about the meaning of the terms used in these calls. According to this testimony, Unc was Mr. Duran's supplier, "gooey, gooey" and "raindrops" referred to the making of crack cocaine, and "hard" was code for crack cocaine. The officers also testified that

- Mr. Birch was poking fun at the quality of the cocaine that Mr. Duran had previously furnished and

- Mr. Duran was telling Mr. Birch that the quality of this cocaine would leave him wanting more of it.

6

**5.    Mr. Duran challenges the sufficiency of evidence showing his actual possession on March 8.**

Mr. Duran argues that this combination of evidence was insufficient because there was no physical evidence of the drugs or testimony from anyone who had seen Mr. Duran with the cocaine. According to Mr. Duran, the government showed only that Unc had possessed cocaine, not that he had given it to Mr. Duran.

**6.    Our prior opinions recognize two categories of evidence: one is sufficient to show possession, the other insufficient.**

We have previously addressed the sufficiency of the evidence of drug possession in the absence of controlled purchases or actual observation of the drugs. Our prior cases address

- recorded calls when the defendant expects to obtain drugs and

- recorded calls when the defendant acknowledges possession of the drugs.

Our case does not comfortably fit entirely into either category.

**a.    The government needed to present circumstantial or direct evidence of possession on March 8.**

Regardless of the category, the government needed to present either direct evidence of drug possession or "enough circumstantial evidence to support an inference that the defendant actually did possess the drugs in

question" on March 8. *United States v. Baggett*, 890 F.2d 1095, 1096 (10th Cir. 1989).

### b. Circumstantial evidence is insufficient if the jury could not reasonably infer actual possession on March 8.

Mr. Duran argues that

- the government presented no testimony showing that he had obtained the cocaine on March 8 and

- guilt requires direct or circumstantial evidence linking him to an observed illegal substance.

For this argument, Mr. Duran compares the government's proof to the evidence that we regarded as insufficient in *United States v. Baggett* and *United States v. Hall*.

In *Baggett*, the government presented

- recordings of three telephone calls indicating that the defendant had arranged to buy illegal drugs,

- testimony that law-enforcement officers had seen the defendant meet a suspected drug dealer, and

- the defendant's acknowledgment of drug use during a one-month period.

890 F.2d 1095, 1096-97 (10th Cir. 1989). We concluded that this combination of evidence did not reasonably support a finding that the defendant possessed the drugs on the pertinent date. *Id.*

And in *Hall*, the government presented

- telephone calls in which the defendant and a drug dealer discussed the price of drugs and agreed to meet and

8

- video surveillance showing that the defendant had briefly entered the drug dealer's car.

473 F.3d 1295, 1307 (10th Cir. 2007). We concluded that this evidence did not show possession of drugs on the pertinent date. *Id.* at 1308–09.

### c. The circumstantial evidence may suffice even if it does not include observation of illegal drugs.

Mr. Duran points out that the government did not present evidence of a controlled buy or observation of drugs on March 8. Given the absence of this evidence, Mr. Duran contends that the government's proof was insufficient.

For this contention, Mr. Duran points out that in *Baggett*, the court said that a conviction must include "testimony linking defendant to *an observed substance* that a jury can infer to be a narcotic." Appellant's Opening Br. at 18–19 (emphasis in original) (quoting 890 F.2d at 1097). To interpret this passage, we consider the context. *See Illinois v. Lidster*, 540 U.S. 419, 424 (2004) (stating that the Supreme Court often reads general language in opinions "as referring in context to circumstances similar to the circumstances then before the Court and not referring to quite different circumstances that the Court was not then considering"); *see also Wisehart v. Davis*, 408 F.3d 321, 326 (7th Cir. 2005) ("Judges expect their pronunciamentos to be read in context.").

9

This passage appeared in the court's discussion of a surveillance operation. Law-enforcement officers had watched the defendant meet with a suspected drug dealer, and the government argued that evidence of the meeting could prove drug possession. The court rejected this argument, remarking that the officers had not seen any illegal drugs. *Id.* at 1096. With this remark, the court did not purport to announce a blanket requirement for testimony by someone who had seen the drugs. Indeed, the *Baggett* court elsewhere acknowledged that circumstantial evidence of possession could include

- proof of "secrecy or deviousness" or

- use of code words when referring to a substance.

*Id.* These examples would make little sense if the *Baggett* court had meant to require observation of the drugs whenever possession is an element.[2] In context, the *Baggett* court was referring to the importance of an "observed substance" when the government's evidence involves physical surveillance.

---

[2] In the next paragraph, the *Baggett* court discussed *United States v. Iacopelli*, where the Second Circuit had regarded the evidence of possession as sufficient based on records showing that the defendant purchased and received controlled substances from a medical supplier. 483 F.2d 159, 161 (2d Cir. 1973). The *Baggett* court distinguished *Iacopelli* on the grounds that "[s]uch strong circumstantial evidence is not present in this case." 890 F.2d at 1097. But *Iacopelli*'s "strong circumstantial evidence" did not include an "observed substance." *Id.*

### d. Direct evidence can include a contemporaneous acknowledgement of possession.

Observation of illegal drugs is also unnecessary when the government presents direct evidence of possession. An example appears in *United States v. Marquez*, where we held that the government had sufficiently proven possession based on recorded telephone calls despite the absence of any testimony involving observation of drugs or controlled buys. 898 F.3d 1036, 1044 (10th Cir.), *cert. denied*, 139 S. Ct. 654 (2018). In *Marquez*, we treated the recorded calls as direct evidence of possession. *Id.* at 1045.

There the government presented a recording of a telephone call between the defendant and a drug dealer. *Id.* In this call, the defendant and drug dealer used code language to discuss the distribution of methamphetamine. For one batch of methamphetamine, the defendant said: "I still have it." *Id.* And for another batch, he said: "I haven't even got to that yet." *Id.* We held that these statements constituted direct evidence of drug possession: "If the jury believed Marquez' statements that he 'still' had the low-quality methamphetamine and 'ha[d]n't even got[ten] to' the high-quality methamphetamine, no further inference was necessary to

11

conclude that he possessed methamphetamine." *Id.* Because no further inference was necessary, the evidence was considered direct. *Id.*

### 7. Our case lacks direct evidence but has greater circumstantial evidence than was in *Baggett* or *Hall*.

In contrast, the evidence against Mr. Duran was indirect. From the first call on March 8, the jury could reasonably infer three facts:

1. Unc had brought powder cocaine and planned to give it to Mr. Duran.

2. Mr. Duran expected to get the powder cocaine from Unc.

3. Mr. Duran was arranging for Mr. Birch to convert the powder cocaine into crack cocaine.

But more was needed to infer that Unc had given the powder cocaine to Mr. Duran.

The need for additional circumstantial evidence distinguishes this case from *Marquez*. There too no one testified about seeing the illegal drugs. But the defendant was heard saying that he still had "it," referring to the drugs. *See* p. 11, above. Given this express statement of current possession, the evidence against the *Marquez* defendant was considered direct. *See* p. 11, above. Here, though, Mr. Duran never expressly acknowledged in the call that he had obtained the cocaine from Unc. Thus, the first recorded call on March 8 does not constitute direct evidence of Mr. Duran's possession on March 8.

But other circumstantial evidence against Mr. Duran could lead to a reasonable inference that he had obtained the cocaine from Unc. While driving to Mr. Birch's apartment complex, Mr. Duran and Mr. Birch talked on the telephone for roughly eighteen minutes. During this call, the only audible voices were theirs and no one mentioned Unc's presence. *See* Gov. Exh. 13a. Mr. Duran told Mr. Birch: "We're about to see bull shit work." And Mr. Birch replied: "Yeah I'm about to see that gooey, that gooey, gooey." *See* p. 5, above. Law-enforcement officers explained that "gooey, gooey" referred to the conversion of powder cocaine into crack cocaine.

After Mr. Duran arrived, he spent roughly 1-1/2 hours with Mr. Birch, which law-enforcement officers testified was enough time to convert the powder cocaine into crack cocaine. Then, on March 11, Mr. Duran acknowledged that he still had "the hard" (crack cocaine) that he had obtained from Mr. Birch. Govt. Exh. 14a at 84.



13

Considering these additional facts, a jury could reasonably find that on March 8, Mr. Duran had

- obtained powder cocaine from Unc,

- referred to the powder cocaine as "it" (in the statement "I want you to raindrop it"),

- brought the powder cocaine to a meeting with Mr. Birch,

- spent roughly 1-1/2 hours with Mr. Birch, converting the powder cocaine into crack cocaine, and

- received crack cocaine from Mr. Birch (which he still had three days later).

This is "enough circumstantial evidence to support an inference that the defendant actually did possess the drugs in question" on March 8. *United States v. Baggett*, 890 F.2d 1095, 1096 (10th Cir. 1989). We thus reject Mr. Duran's challenge to the sufficiency of the evidence on Count 22.

## C. Counts 35 and 36: Use of a Telephone to Facilitate a Drug Offense on March 8 and 11, 2017

Mr. Duran also challenges his convictions for using a telephone to facilitate the commission of a drug offense on March 8 and March 11, 2017. *See* 21 U.S.C. § 843(b). According to Mr. Duran, he could not have facilitated a drug offense

- on March 8 because the government had failed to prove that Unc gave the cocaine to Mr. Duran or

- on March 11 because the jury had found Mr. Duran not guilty of possessing cocaine that day.

14

We reject these challenges.

The government needed to prove that Mr. Duran had

- knowingly and intentionally used a telephone or other communications device

- to commit, cause, or facilitate any act constituting a drug felony.

*United States v. Pickle*, 863 F.3d 1240, 1257 (10th Cir. 2017). These elements required proof that Mr. Duran's use of a telephone made the underlying drug crimes easier to commit. *Id*. But Mr. Duran could be guilty of facilitation even if someone else had committed the underlying drug crime. *See United States v. Orihuela*, 320 F.3d 1302, 1304 (11th Cir. 2003) ("[O]ne of the elements of an offense under § 843(b) is the commission by someone of an underlying controlled substance offense.").

The government presented sufficient evidence of Mr. Duran's facilitation of drug crimes on March 8 and 11. He had knowingly and intentionally used a telephone, and the factfinder could reasonably infer that the calls had helped Mr. Birch to buy cocaine and convert it into crack cocaine.

Mr. Duran argues that his partial acquittal suggested that the jury hadn't believed that he possessed cocaine on March 11. But an acquittal on the underlying drug crime does not prevent a conviction on the facilitation charges. *See United States v. Powell*, 469 U.S. 57, 64–65 (1984) (holding that a defendant can be convicted of telephone facilitation despite an

15

acquittal on the predicate felony); *see also United States v. Milton*, 62 F.3d 1292, 1294 (10th Cir. 1995) ("[T]he Supreme Court has held that even if a defendant is acquitted on the underlying felony, a facilitation conviction may still stand.").[3] The factfinder could thus reasonably conclude that Mr. Duran had facilitated commission of a drug crime on March 11 as well as on March 8.

**3.      The district court acted within its discretion in allowing Officer Fania to testify about controlled buys from Mr. Birch.**

Officer Frank Fania briefly testified about a confidential informant's controlled buys from Mr. Birch in March 2016 and January 2017. Mr. Duran argues that the testimony should have been excluded based on

---

[3]      In his reply brief, Mr. Duran argues that the government failed to prove the possession of *any* drugs on March 11, foreclosing the possibility that Mr. Duran could have facilitated the commission of a felony on that day. But Mr. Duran did not make this argument in his opening brief. There he had relied solely on his acquittal on Count 24, which charged distribution and possession of cocaine with intent to distribute 28 grams or more of a substance containing cocaine base (crack cocaine) on March 11. Expanding the argument in his reply brief was too late. *United States v. Mendoza*, 468 F.3d 1256, 1260–61 (10th Cir. 2006).

irrelevance, unfair prejudice, hearsay, and lack of personal knowledge. We reject these arguments.

### A. Standard of Review

We review the district court's evidentiary rulings for an abuse of discretion. *United States v Banks*, 884 F.3d 998, 1023 (10th Cir. 2018).

### B. Relevance and Unfair Prejudice

In applying the abuse-of-discretion standard, "we give the evidence its maximum reasonable degree of relevance and its minimum reasonable danger of unfair prejudice." *United States v. Tee*, 881 F.3d 1258, 1273 (10th Cir. 2018). The district court may then exclude the evidence if the danger of unfair prejudice substantially outweighs the probative value. *United States v. Silva*, 889 F.3d 704, 712 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 1319 (2019).

Officer Fania testified about the investigation of Mr. Birch and described the events triggering the investigation of Mr. Duran. During the investigation of Mr. Birch, Officer Fania was in charge of the surveillance. The district court could reasonably regard his testimony as relevant.

The prosecution can ordinarily present overview testimony describing the start of, and techniques in, the investigation. *United States v. Brooks*, 736 F.3d 921, 930 (10th Cir. 2013). Here, for example, an overview could help the jury understand the content and significance of the conversations between Mr. Duran and Mr. Birch. These conversations

17

include language that Mr. Birch had previously used when referring to cocaine and its conversion into crack cocaine. Given this prior use of language, the jury could reasonably infer that the code words had shown involvement in converting powder cocaine into crack cocaine.

Mr. Duran also contends that even if the testimony had been relevant, it would have created unfair prejudice. The testimony might have been unfairly prejudicial if it had suggested guilt by association, unfairly impugned the defendant's credibility, or included statements unsupported by personal knowledge. *See United States v. Banks*, 884 F.3d 998, 1023 (10th Cir. 2018). But the district court could reasonably regard these dangers as absent, for the government did not use Mr. Birch's prior drug sales to

- show that Mr. Duran had possessed or sold cocaine in March 2017 or

- impugn Mr. Duran's credibility.

*See United States v. Banks*, 884 F.3d 998, 1024 (10th Cir. 2018) (upholding the admissibility of overview testimony that had not included an opinion on the witnesses' trustworthiness or guilt). The district court could thus reasonably conclude that Officer Fania's overview testimony had not created unfair prejudice.

18

## C.    Hearsay

Mr. Duran also regards Officer Fania's testimony as inadmissible hearsay.[4] We disagree.

At trial, Mr. Duran raised only one hearsay objection to Officer Fania's testimony. The government asked Officer Fania: "What about those controlled purchases you had talked about?" R., vol. III, at 107.[5] Mr. Duran objected, and the district court overruled the objection. Officer Fania answered without referring to any out-of-court statements:

> A.    We were using an informant who made a controlled purchase from Jerrell Birch that day.
>
> Q.    On March 11th?
>
> A.    Correct. March 11, 2016.
>
> Q.    And I apologize. I might have -- I might have misunderstood you. Did you say there were two in March of 2016?
>
> A.    There were.
>
> Q.    So March 11th, and what was the other day?
>
> A.    I believe the second one was March 25th.

---

[4]    In a footnote, Mr. Duran also contends that Officer Fania's testimony violated the Confrontation Clause. Appellant's Opening Br. at 33 n.9. This contention was inadequately developed. *See United States v. Hardiman*, 297 F.3d 1116, 1131 (10th Cir. 2002) (en banc) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived.").

[5]    Officer Fania had previously testified that the agents were working with a confidential informant who could make a controlled buy from Mr. Birch. *See* R., vol. III, at 96.

19

Q. And you indicated you used a confidential human source?

A. Correct.

Q. Were the steps that you previously described as to both of these purchases used?

A. They were all of them used.

Q. Okay. So it was audio-recorded and surveillance observed these?

A. That is correct.

Q. And transpired during those controlled purchases in terms of the deal?

A. The informant made phone contact with Jerrell. Ultimately they met, and on, I believe, March 11th purchased -- or the informant purchased one ounce of crack cocaine. On the second one, on March 25th, the informant purchased two ounces of crack cocaine from Jerrell Birch?

Q. And so did those controlled purchases further your investigation of Jerrell Birch?

A. They absolutely did.

*Id.* at 108-09. Given the absence of any mention of an out-of-court statement, the district court acted within its discretion in overruling the hearsay objection. After this exchange, Mr. Duran never lodged another hearsay objection to Officer Fania's testimony.

Despite the absence of further objection, Mr. Duran suggests that some of the follow-up questions elicited hearsay. Hearsay consists of an out-of-court statement offered for the truth of the matter asserted. Fed. R.

20

Evid. 801(c). But a law-enforcement officer's "out of court statements are not hearsay when offered for the limited purpose of explaining why a Government investigation was undertaken." *United States v. Freeman*, 816 F.2d 558, 563 (10th Cir. 1987).

Mr. Duran suggests that some of the follow-up questions went beyond this limited purpose.[6] But Mr. Duran does not identify any improper questions. *See United States v. Marquez*, 898 F.3d 1036, 1052 (10th Cir. 2018) (stating that the issue was inadequately briefed when the defendant broadly challenged the introduction of overview testimony without identifying any particular testimony that had been improperly admitted or explaining why that particular testimony had been inadmissible). Rather than identify any improper questions, Mr. Duran states that Officer Fania "told the jury that the confidential source [had] engaged in three controlled buys with Mr. Birch prior to Mr. Duran's alleged involvement in the conspiracy." Appellant's Opening Br. at 30. But Mr. Duran does not identify any of the informant's hearsay statements.[7]

---

[6] Mr. Duran also contends that if the testimony had a limited purpose, the district court should have given a limiting instruction. But Mr. Duran did not request a limiting instruction, and the district court did not err in declining to give one sua sponte. *See United States v. Record*, 873 F.2d 1363, 1376 (10th Cir. 1989) ("[I]t is not error for a trial court to fail to [issue a limiting instruction] in the absence of a request by counsel.").

[7] Mr. Duran argues that the testimony could constitute hearsay even if Officer Fania hadn't identified the informant's actual statements. Appellant's Opening Br. at 31–32. For this argument, Mr. Duran relies on a

Mr. Duran contends that even if Officer Fania hadn't recited the actual statements, he narrated the substance of what the informant had said. But Mr. Duran does not identify a single out-of-court statement recollected by Officer Fania. And even if Mr. Duran had identified the purported hearsay testimony, he forfeited further hearsay arguments because he never asserted another hearsay objection to any of the questions put to Officer Fania. *See United States v. Norman T.*, 129 F.3d 1099, 1106 (10th Cir. 1997).[8]

### D. Lack of Personal Knowledge

Mr. Duran argues that Officer Fania lacked personal knowledge of the controlled buys from Mr. Birch. This argument is unpreserved and invalid.

We address preservation in our local rules. Rule 28.1(A) requires appellants to cite in the record where the issue was raised and decided. Mr.

---

First Circuit opinion: *United States v. Meises*, 645 F.3d 5, 22 n.25 (1st Cir. 2011). But we have declined to follow *Meises*. *See, e.g.*, *United States v. Fletcher*, 497 F. App'x 795, 804–05 (10th Cir. 2012) (unpublished) (declining to follow *Meises* and upholding law-enforcement testimony about the roles played by various participants in illegal activities); *see also United States v. Marquez*, 898 F.3d 1036, 1051–52 (10th Cir. 2018) (stating that *Meises* does not "establish the well-settled law of this circuit").

[8] Despite the forfeiture, Mr. Duran could have argued plain error. *United States v. Kearn*, 863 F.3d 1299, 1313 (10th Cir. 2017). But he didn't. *See id.* (declining to consider a forfeited contention based on the failure to urge plain error).

Duran complied with this rule by citing Volume III, pages 107–09. But these pages do not contain any objection to Officer Fania's testimony based on a lack of personal knowledge. Indeed, we have scoured the record and find no objection to Officer Fania's testimony based on a lack of personal knowledge.

Mr. Duran did object to one question on the ground that it called for hearsay. *See* p. 19, above. But the rules governing hearsay and personal knowledge are distinct and address different evidentiary defects. *See United States v. Mandel*, 591 F.2d 1347, 1369 (4th Cir. 1979) (discussing the differences between the rules addressing hearsay and personal knowledge); *Agfa-Gevaert, A.G. v. A.B. Dick Co.*, 879 F.2d 1518, 1523 (7th Cir. 1989) ("Knowledge acquired through others may still be personal knowledge within the meaning of Fed. R. Evid. 602, rather than hearsay, which is the repetition of a statement made by someone else—a statement offered on the authority of the out-of-court declarant and not vouched for as to truth by the actual witness."). So the assertion of a hearsay objection did not preserve an argument that Officer Fania lacked personal knowledge. *See Schulenberg v. BNSF Rw. Co.*, 911 F.3d 1276, 1288 n.6 (10th Cir. 2018) (concluding that the appellant's objection on hearsay grounds failed to preserve an objection involving a lack of personal knowledge).

Even if Mr. Duran had preserved the objection, however, it would have failed. The foundational requirement for personal knowledge "is not difficult to meet." *United States v. de Lopez*, 761 F.3d 1123, 1132 (10th Cir. 2014). The district court considers only whether "a rational juror could conclude based on a witness's testimony that he or she has personal knowledge of a fact." *Id.*

Officer Fania testified that he had participated in the arrangements for the controlled buys. Given this testimony, the district court had the discretion to find personal knowledge for Officer Fania's testimony about the controlled buys. *See United States v. Marquez*, 898 F.3d 1036, 1049 (10th Cir. 2018) (holding that an officer's knowledge of recorded conversations provided personal knowledge).[9] We would thus reject this appellate argument even if it had been preserved.

**4.     The district court acted within its discretion in allowing Officer Rossi to testify about the meaning of recorded calls.**

After the government played recordings of calls in February 2017 and on March 8, 2017, Officer Rossi interpreted some of the language. On

---

[9]     The government points out that Officer Fania testified as one of the two case agents, using the first-person "we" to describe what his team of investigators had done. In response, Mr. Duran denies that Officer Fania's use of the pronoun "we" was enough to show personal knowledge. But a rational factfinder could conclude that Officer Fania, as one of the two case agents, knew what his team of investigators had done. *See United States v. Decoud*, 456 F.3d 996, 1012 (9th Cir. 2006) (concluding that a case agent had personal knowledge based on his participation in the surveillance and interactions with a confidential informant).

24

appeal, Mr. Duran argues that the testimony was inadmissible because Officer Rossi had improperly (1) expressed an opinion on Mr. Duran's guilt, (2) based his opinion on inadmissible hearsay, and (3) expressed views that were unfairly prejudicial. We reject these arguments.

### A. Calls in February 2017

For the calls in February 2017, Officer Rossi testified that

- Mr. Duran appeared to be trying to collect money from Mr. Birch and

- the discussion of "putting it in the water" suggested drug dealing.

Mr. Duran did not object to any of this testimony. As a result, he forfeited his current appellate challenge to this part of the testimony. *United States v. Wardell*, 591 F.3d 1309–10 (10th Cir. 2009). Though we could entertain an argument involving plain error, Mr. Duran has not urged plain error. *See* note 8, above. We would thus ordinarily decline to consider this argument. *See* note 8, above.

But Mr. Duran's appellate argument would fail even if he had preserved the challenge. If the challenge had been preserved, we would apply the abuse-of-discretion standard. *United States v. Comanche*, 577 F.3d 1261, 1266 (10th Cir. 2009). Applying this standard, we would consider Officer Rossi's testimony, which had used the recorded calls to explain why his team broadened the investigation to include Mr. Duran.

25

Mr. Duran argues that Officer Rossi was improperly providing his lay opinion about the conspiracy and the reliability of the investigation. But Mr. Rossi did not testify about his conclusions from the February calls; he simply explained why investigators had turned their attention to Mr. Duran. *See United States v. Warman*, 578 F.3d 320, 348 (6th Cir. 2009) (concluding that law-enforcement officers' testimony, which identified the defendant as a supplier, had been relevant and not unfairly prejudicial because the testimony had "explained the reason for the government's investigation" of the defendant and others). So even if Mr. Duran had objected, the district court would have had the discretion to permit this part of Officer Rossi's testimony.

## B.    Calls on March 8, 2017

Officer Rossi also testified about his interpretation of five calls made on March 8, 2017. According to Officer Rossi, these calls showed that Mr. Duran had obtained cocaine from Unc, arranged to meet Mr. Birch, and provided Mr. Birch with cocaine. In Officer Rossi's view, two later telephone calls confirmed that the two men had met on March 8 to convert the powder cocaine into crack cocaine. Mr. Duran contends that the testimony improperly communicated Officer Rossi's opinions on guilt and

the meaning of code words, was based on hearsay, and was unfairly prejudicial. We reject these contentions.

### 1.    Opinions on Guilt and the Meaning of Code Words

Mr. Duran contends that Officer Rossi improperly testified about his own beliefs of Mr. Duran's guilt and the meaning of code words. We reject these contentions.

According to Mr. Duran, this testimony improperly waded into guilt or innocence, a matter reserved for the jury. We reject this argument.

Law-enforcement agents can ordinarily testify that the defendants were engaged in drug trafficking because this testimony constitutes opinion evidence on a fact issue. *See United States v. Barbee*, 968 F.2d 1026, 1031–32 (10th Cir. 1992); *see also United States v. Marquez*, 898 F.3d 1039, 1048–49 (10th Cir. 2018) (holding that a law-enforcement officer could testify about a defendant's role as a drug distributor because the testimony was factual and objectively based on the officer's knowledge of recorded telephone calls).

Mr. Duran contends that Officer Rossi went too far by expressing his belief that Mr. Duran was guilty. We disagree with this characterization of the testimony. Officer Rossi simply explained why he had turned his attention toward Mr. Duran: After surveilling Mr. Birch and listening to his calls, Officer Rossi broadened the investigation because he thought that Mr. Duran would help Mr. Birch convert the powder cocaine into crack

27

cocaine. *See United States v. MacKay*, 715 F.3d 807, 838 (10th Cir. 2013) (holding that the district court did not err in allowing an expert witness to testify about her observation based on the evidence rather than simply tell the jury what result to reach). Officer Rossi thus framed his opinion in the past tense by referring to his earlier beliefs based on what he had observed:

> On March 8, based on the calls, I *believed* that Mr. Duran was going to meet Mr. Birch at his residence on Paris -- at 1650 Paris. During that, Mr. Duran was going to provide Mr. Birch with what Unc's had provided him, which we *believed* -- and other investigators as well *believed* that Mr. Birch was going to assist Mr. Duran in making crack cocaine from the powder cocaine received from Unc's.

R., vol. III, at 330–31 (emphasis added). The district court did not abuse its discretion by allowing Officer Rossi to testify about how his earlier beliefs had led the officers to broaden their investigation.

Officer Rossi also testified about the meaning of code words used by Mr. Duran and Mr. Birch. The district court did not err in allowing this testimony, for it could reasonably be considered a lay opinion based on information learned through the investigation. *See United States v. Cheek*, 740 F.3d 440, 447–48 (7th Cir. 2014) (holding that an agent's testimony about the meaning of drug-code words was admissible as a lay opinion based on personal observations and perceptions derived from his investigation); *see also United States v. Akins*, 746 F.3d 590, 599 (5th Cir. 2014) ("[T]estimony about the meaning of drug code words can be within

the proper ambit of a lay witness with extensive involvement in the underlying investigation.").

## 2. Hearsay

Mr. Duran also argues that Officer Rossi based his testimony on hearsay. But Mr. Duran forfeited this argument by failing to lodge a hearsay objection to Officer Rossi's testimony about the March 8 calls. *See* p. 22, above. We could ordinarily consider the possibility of plain error. *See* note 8, above. But Mr. Duran has not alleged plain error, so we decline to consider Mr. Duran's appellate challenge. *See* note 8, above.

## 3. Unfair Prejudice

Mr. Duran also contends that the testimony was unfairly prejudicial because the jury might have accepted Officer Rossi's testimony "as gospel." Appellant's Opening Br. at 43. For this contention, the district court considers whether the danger of unfair prejudice substantially outweighs the testimony's relevance. Fed. R. Evid. 403. In addressing this inquiry, we give the evidence its "maximum reasonable degree of relevance and its minimum reasonable danger of unfair prejudice." *United States v. Tee*, 881 F.3d 1258, 1273 (10th Cir. 2018); *see* p. 17, above.

Viewing the evidence in this light, we conclude that the district court need not have viewed the unfair prejudice as substantially greater than the testimony's relevance. The calls on March 8 used peculiar language that would have made little sense in the absence of guidance about how Mr.

Duran and Mr. Birch had communicated with one other. The district court could thus reasonably conclude that the testimony was admissible despite the possibility of unfair prejudice. *See United States v. Valbrun*, 877 F.3d 440, 444–45 (1st Cir. 2017) (concluding that the district court had the discretion to find lay testimony about drug-code words admissible and rejecting an appellate argument based on the danger of unfair prejudice).

The district court also took measures to ensure that the jury viewed Officer Rossi's testimony with the proper perspective. During the testimony, the court told the jury that

- Officer Rossi was "reaching conclusions as the case agent, which explain where he's coming from in this case" and

- the jury was "to decide if they agree with him."[10]

And after the close of the evidence, the district court instructed the jury to "[r]emember at all times that [they were] judges of the facts" and were to decide if the government had proven guilt "beyond a reasonable doubt."[11]

Given these instructions, Officer Rossi's testimony did not impede the jury's assessment of the evidence. The district court thus did not abuse its discretion in overruling Mr. Duran's objection involving unfair prejudice.

---

[10]    R., vol. III, at 311.

[11]    R., vol. I, at 329.

In summary, the district court did not err in allowing Officer Rossi to testify about the meaning of the recorded calls. Mr. Duran forfeited his appellate argument about the calls recorded in February 2017. For the calls recorded on March 8, 2017, the district court acted within its discretion in allowing the testimony.

**5.    The district court acted within its discretion in allowing Agent Peterson to testify about coded language.**

Finally, Mr. Duran contends that the district court erred in admitting expert testimony by Agent Donald Peterson. The government presented Agent Peterson as an expert on drug-trafficking trends, patterns, and communications. Mr. Duran objected to Agent Peterson's qualifications as an expert on drug dealers' use of code language. The district court overruled the objection, concluding that "by training and experience [Agent Peterson] has sufficient expertise to at least be permitted to express opinions." R. vol. III, at 444.

With this objection overruled, Agent Peterson testified that drug dealers typically do not use the words "crack" or "cocaine" when speaking on the telephone, noting that drug dealers often use code words like "bread," "loot," "paperwork," "titles" (money), "rack" (a thousand dollars), "work" (cocaine), "soft" (powder cocaine"), "hard" (crack cocaine), "heezy" (half of a kilogram or half of an ounce), "raindrop," and

31

"gooey, gooey" (the process of converting cocaine into crack cocaine). *See* R., vol. III, at 462–64, 484, 487–88.

Mr. Duran argues that

- the district court failed to make adequate findings on the reliability of the testimony and

- Agent Peterson was not qualified to testify about the use of code language.

Mr. Duran observes that Agent Peterson had never testified as an expert in a jury trial, had never spoken about the term "raindrops," had not remembered speaking about the term "heezy," and had not relied on any publications.

The district court must act as a gatekeeper, ensuring that the proffered opinions rest on a reliable foundation and are relevant to the issues. *United States v. Roach*, 582 F.3d 1192, 1206 (10th Cir. 2009). Although "the gatekeeper inquiry under Rule 702 is ultimately a flexible determination, . . . a district court, when faced with a party's objection, must adequately demonstrate by specific findings on the record that it has performed its duty as gatekeeper." *Goebel v. Denver & Rio Grande W. R.R. Co.,* 215 F.3d 1083, 1088 (10th Cir. 2000).

We consider de novo whether the court applied the proper standard for allowing expert testimony and made sufficient findings. *Roach*, 582 F.3d at 1206. We then determine whether the rulings fell within the district court's discretion. *Id.*

32

The district court's findings were adequate. The court found sufficient expertise based on Agent Peterson's training and expertise; more detailed findings were not required. *See, e.g.*, *United States v. Cui Qin Zhang*, 458 F.3d 1126, 1129 (10th Cir. 2006).

These findings were supported by the record. Agent Peterson had extensive experience with drug trafficking cases: over 16 years' experience in law enforcement, including observation of 75 to 100 drug deals and more than 50 controlled buys. In light of this experience, the district court acted within its discretion in allowing Agent Peterson to testify about the use of coded language.

**6.    Conclusion**

We thus affirm Mr. Duran's convictions.